PAUL B. SNYDER
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

✓ FILED
____ LODGED
____ RECEIVED

**October 18, 2006**

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____ DEPUTY

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re:<br><br>JONATHAN EARL BURGESS,<br><br>           Debtor. | Case No. 05-51380 |
| JONATHAN EARL BURGESS,<br><br>           Plaintiff,<br><br>    v.<br><br>U.S. DEPARTMENT OF EDUCATION, GC SERVICES, EDUCATIONAL CREDIT MANAGEMENT CORPORATION, as substituted defendant for NEW YORK STATE HIGHER EDUCATION SERVICES, and OHIO COLLEGE OF PODIATRIC MEDICINE<br><br>           Defendants. | Adversary No. 06-04071<br><br>**MEMORANDUM DECISION**<br><br>**NOT FOR PUBLICATION** |

Trial was held in this matter on October 4, 2006. Jonathan Earl Burgess (Debtor), in accordance with his complaint, seeks to have the student loans owed by him to Defendant Educational Credit Management Corporation (ECMC) declared dischargeable under 11 U.S.C. § 523(a)(8). Based on the evidence and arguments presented at trial, the Court's findings of fact and conclusions of law are as follows:

MEMORANDUM DECISION - 1

## FINDINGS OF FACT

The facts do not appear to be in dispute and are summarized in an Agreed Pretrial Order filed with the Court on October 4, 2006. The Debtor is a 52-year-old single man with a son who is currently attending Evergreen State College. Although the Debtor is not subject to a state court support order, he voluntarily gives $330 per month to his son for college expenses. The Debtor has a Bachelor's degree in Economics with a minor in Mathematics from the State University of New York at Buffalo, earned in 1976. He has an Associates degree in Applied Technologies (Electronics) from Onodaga Community College that was earned in 1984, and a Doctorate degree in Podiatric Medicine from Ohio College of Podiatric Medicine earned in May, 1990.

The Debtor has held a number of entry level positions, before and after earning his degree in podiatric medicine in 1990. These include work in construction, bookkeeping, and employment as a tow truck driver. In 1996, his license to practice podiatry was revoked by the Washington State Department of Health Podiatric Medical Board. The Debtor was found to have violated the Uniform Disciplinary Act (RCW 18.130, et. seq.) due to violations concerning patient care, billing, and the maintenance of medical records. The Debtor still denies the allegations. He was eligible to apply for reinstatement of his podiatry license in 1999; however, he testified that he will not pursue reinstatement either in Washington State or any other state as a matter of conscience. The Debtor admitted at trial that his colleague, whose license was also revoked, has successfully reinstated his license.

The Debtor currently works as a member of a "set crew" for Retail Project Managers, where he constructs product bays at Home Depot stores. His hourly wage is $14 ($21 for overtime), and receives reimbursements for travel and meal expenses. The Debtor's net

MEMORANDUM DECISION - 2

monthly pay is approximately $2,027. Schedule J indicates that the Debtor's net monthly expenses are approximately $2,100. These amounts do not include employer reimbursements for gasoline and food. In his deposition, admitted into evidence, the Debtor indicated that he receives anywhere from $840 to $1,200 per month for car related expenses, and food reimbursement of approximately $400 per month. Accordingly, the gasoline and food listed as monthly expenses in the Debtor's Schedule J would be markedly reduced. Also included in the Debtor's Schedule J expenses is $330 for his son's college education, and $200 to be paid to the Internal Revenue Service. The Debtor testified that it is important that he help pay for his son, presumably instead of paying on his own past due student loans. The Debtor owes the Internal Revenue Service approximately $9,000 for failure to pay federal income taxes from 1990 to 2004, and has now agreed to pay them $100 per month.

The Debtor's student loan debt owed to ECMC, as of August 28, 2006, is $77,113.44, consisting of nine separate loans. The last payment made on his student loans was in 1992. There has been no evidence presented that the Debtor applied for or agreed to accept the Income Contingent Repayment Plan through the William D. Ford Direct Consolidation Loan Program (ICRP) that would allow him to repay the student loans based on his current income level, with yearly adjustments. At the Debtor's current income level of approximately $28,282, the payment would be approximately $311 per month. The Debtor is in good health and has no physical impairments.

## CONCLUSIONS OF LAW

Initially the burden of proof is on the lender to establish the existence of the debt, and that the debt is owed to, insured, or guaranteed by a governmental agency or nonprofit institution, or was incurred for an obligation to repay funds received as an educational benefit,

MEMORANDUM DECISION - 3

scholarship or stipend. The parties stipulated in the Agreed Pretrial Order that this burden

has been met. The burden of proof then shifts to the debtor to establish undue hardship

within the meaning of 11 U.S.C. § 523(a)(8). Raymond v. Northwest Educ. Loan Ass'n. (In re

Raymond), 169 B.R. 67, 69-70 (Bankr. W.D. Wash. 1994) (citing The Cadle Co. v. Webb

(In re Webb), 132 B.R. 199, 201 (Bankr. M.D. Fla. 1991)).

There is no statutory definition of "undue hardship." In the case of Pena v. United

Student Aid Funds, Inc. (In re Pena), 155 F.3d 1108, 1112 (9th Cir. 1998), the Ninth Circuit

Court of Appeals adopted a three prong test set forth in Brunner v. New York State of Higher

Educ. Servs. Corp. (In re Brunner), 831 F.2d 395, (2d Cir. 1987). Under this standard, the

Debtor must establish

> (1) that the debtor cannot maintain, based on current income and expenses, a
> "minimal" standard of living for [the debtor] and [any] dependents if forced to
> repay the loans; (2) that additional circumstances exist indicating that this state of
> affairs is likely to persist for a significant portion of the repayment period of the
> student loans; and (3) that the debtor has made good faith efforts to repay the
> loans.

Brunner, 831 F.2d at 396.

The first prong of the Brunner test requires an examination of the Debtor's current

income and expenses to ascertain if payment of the loan would cause his standard of living to

fall below that minimally necessary if he is required to repay his student loans. The Debtor

could afford to make payments under the IRCP program (approximately $311 per month) by

not paying his son's monthly education expense (approximately $330 per month). The Court

concludes that based on his current income, he is able to maintain a minimal standard of

living, that is exactly the same standard of living he now enjoys, and still make significant

payments on his student loans, merely by paying on his own student loans instead of to his

MEMORANDUM DECISION - 4

son for his educational expenses. The Debtor has not established that he meets the first prong of the <u>Brunner</u> test.

The second prong of the <u>Brunner</u> test requires that the Debtor establish that additional circumstances exist indicating that his state of affairs is likely to persist for a significant portion of the repayment period. The Debtor has no health problems that restrict his ability to work. In considering this second prong, the age of a debtor is found to be a relevant factor that must be considered by the Court. <u>Sequeira v. Sallie Mae Servicing Corp. (In re Sequeira)</u>, 278 B.R. 861, 866 (Bankr. D. Or. 2001) (citing <u>Brown v. Union Fin. Servs. Inc. (In re Brown)</u>, 249 B.R. 525, 527 (Bankr. W.D. Mo. 2000)). It is clear that any complete student repayment plan would require him to work significantly beyond his average working life to repay his entire student loan debt, plus interest, owed on his student loans. This may be true even if he were to receive a loan consolidation at a lower interest rate. Absent unforeseen circumstances, given his current employment he will be unable to repay all of his student loans, given the time to retirement. In this regard a debtor must show only that his present inability to pay will likely persist throughout a substantial portion of the loan repayment period. He does not have to meet a separate burden of proving any additional circumstances, beyond an inability to pay now or in the future. <u>Nys v. Educational Credit Mgmt. Corp. (In re Nys)</u>, 446 F.3d 938, 946 (9th Cir. 2006). In the current case, however, the Debtor cannot ignore a reasonable opportunity to improve his financial position, which he is apparently doing by not seeking to reinstate his podiatrist license primarily as a matter of conscience. <u>Nys</u>, 446 F.3d at 946. Employment as a podiatrist would result in greater income than accepting primarily entry level positions. Accordingly, this second prong of the <u>Brunner</u> test is not met.

The third prong of the <u>Brunner</u> test requires that the Debtor prove that he has made good faith efforts to repay the loans. The Debtor has failed to make any payments since 1992. This was during the time he was a podiatrist, presumably earning significant more income than he now earns. The Debtor has also failed to maximized his income, merely by following though on reinstatement of his license as required of the State of Washington. His only reason for not doing so is a matter of conscience and possibly the initial start-up costs. The Court has also considered <u>Birrane v. Pennsylvania Higher Educ. Assistance Agency (In re Birrane)</u>, 287 B.R. 490 (9th Cir. BAP 2002), where the Ninth Circuit Bankruptcy Appellate Panel held that the good faith test is also measured by a debtor's efforts to negotiate a repayment plan. It is recognized that the Debtor has not applied for the ICRP repayment plan, or any other student loan repayment plan. Nor has the Debtor adequately explained why more payments could not have been made on his student loans, given his employment as a podiatrist from 1992 to 1996. Assuming that he was accepted into the ICRP program, his loan payments would be adjusted yearly based on his available disposable income. Further, any remaining loan amount would be substantially lowered or possibly forgiven upon his retirement, depending upon his disposable income at that time. Because the Debtor has failed to meet his burden of proof required by <u>Brunner</u>, "undue hardship" under 11 U.S.C. § 523(a)(8) has not been established. The Debtor's student loans are not discharged.

DATED:     October 18, 2006

_____
Paul B. Snyder
Paul B. Snyder
U.S. Bankruptcy Judge