PAUL B. SNYDER
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

✓ FILED
\_\_\_\_LODGED
\_\_\_\_RECEIVED

**August 20, 2007**

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____DEPUTY

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re: | Case No. 05-51380 |
| JONATHAN EARL BURGESS, | |
| Debtor. | |
| JONATHAN EARL BURGESS, | Adversary No. 06-04071 |
| Plaintiff, | **MEMORANDUM DECISION** |
| v. | |
| U.S. DEPARTMENT OF EDUCATION, GC SERVICES, EDUCATIONAL CREDIT MANAGEMENT CORPORATION, as substituted defendant for NEW YORK STATE HIGHER EDUCATION SERVICES, and OHIO COLLEGE OF PODIATRIC MEDICINE | **NOT FOR PUBLICATION** |
| Defendants. | |

This matter came before the Court on June 26, 2007, on the United States' Motion for Summary Judgment against Jonathan Earl Burgess (Debtor). The Debtor, in accordance with his complaint, seeks to have the student loans owed by him to Defendant United States Department of Education (DOE) declared dischargeable under 11 U.S.C. § 523(a)(8). Based

MEMORANDUM DECISION - 1

on the pleadings and arguments presented, the Court's findings of fact and conclusions of law are as follows:

**FINDINGS OF FACT**

After conducting a trial in October, 2006, between the Debtor and Defendant Educational Credit Management Corporation (ECMC), this Court concluded that the Debtor's student loans by ECMC were not dischargeable under 11 U.S.C. § 523(a)(8). As requested by DOE, the undisputed factual findings contained in the Court's Memorandum Decision issued October 18, 2006 (ECMC Decision), will be incorporated, as applicable, into the findings herein. The current facts unique to DOE also appear undisputed.

At the time of the October, 2006 trial, the Debtor was 52 years old. He remains single. The Debtor has a Bachelor's degree in Economics with a minor in Mathematics from the State University of New York at Buffalo, earned in 1976. He has an Associates degree in Applied Technologies (Electronics) from Onodaga Community College that was earned in 1984, and a Doctorate degree in Podiatric Medicine from Ohio College of Podiatric Medicine earned in May, 1990.

The Debtor has held a number of entry level positions, before and after earning his degree in podiatric medicine in 1990. These include work in construction, bookkeeping, and employment as a tow truck driver. In 1996, his license to practice podiatry was revoked by the Washington State Department of Health Podiatric Medical Board. The Debtor was found to have violated the Uniform Disciplinary Act (RCW 18.130, et. seq.) due to violations concerning patient care, billing, and the maintenance of medical records. The Debtor still denies the allegations. He was eligible to apply for reinstatement of his podiatry license in 1999; however, he testified in October, 2006, and he continues to maintain, that he will not

MEMORANDUM DECISION - 2

pursue reinstatement in Washington State as a matter of conscience. This, in turn, precludes him from pursuing podiatry work in any other state. The Debtor admitted at trial that his colleague, whose license was also revoked, has successfully reinstated his license.

Regardless of the issues of conscience, the Debtor maintains that due to his absence from the podiatry profession for over a decade, he suffers from ignorance and forgotten details that permanently preclude him from returning to medical practice. Furthermore, the Debtor represents that to have his podiatry license reinstated in Washington, he would be required to pay $5,000 to the Board of Podiatry (Board), at least $500 for the licensing test, and at least $700 for the license. If his license was reinstated, the Debtor would be required to work as a resident under the Board's supervision for one year, and then work under its supervision for an unlimited period of time.

The Debtor currently works as a maintenance technician for the apartment complex in which he lives, earning $14 an hour. He works 40 hours a week with very little overtime. Although the Debtor holds a different position from the one held during the 2006 trial, he continues to earn the same hourly wage.

The Debtor obtained the student loans from DOE between 1987 and 1990. The total debt owed to DOE as of March 9, 2007, is $126,357.16. Although the United States was able to offset a total of $345.05 through the Federal Offset Program and apply it to the Debtor's loan debt, the Debtor has never made a single voluntary payment to DOE on his loans. He failed to make any payments on his DOE loan even when he was practicing as a podiatrist. There is no evidence that the Debtor has ever attempted to negotiate a repayment plan with DOE.

MEMORANDUM DECISION - 3

DOE has determined through the Income Contingent Repayment option for loan repayment, that a reasonable and affordable payment for the Debtor is $300.00 per month. The Debtor remains in good health and has no physical impairments, other than a sore tooth at the time of the June 26 hearing.

**CONCLUSIONS OF LAW**

The party seeking summary judgment bears the burden of demonstrating that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548 (1986). All inferences drawn from the evidence presented must be drawn in favor of the party opposing summary judgment, and all evidence must be viewed in the light most favorable to that party. Summary judgment should be granted if, after taking all reasonable inferences in the nonmoving party's favor, the court finds that no reasonable jury could find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505 (1986). The responding party must present affirmative evidence in order to defeat a properly supported motion for summary judgment. The responding party may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Liberty Lobby, 477 U.S. at 256.

For purposes of an action under 11 U.S.C. § 523(a)(8), initially the burden of proof is on the lender to establish the existence of the debt, and that the debt is owed to, insured, or guaranteed by a governmental agency or nonprofit institution, or was incurred for an obligation to repay funds received as an educational benefit, scholarship or stipend. There is no dispute that this initial burden has been met. The burden of proof then shifts to the debtor to establish undue hardship within the meaning of § 523(a)(8). Raymond v. Nw. Educ. Loan

Ass'n. (In re Raymond), 169 B.R. 67, 69-70 (Bankr. W.D. Wash. 1994) (citing The Cadle Co. v. Webb (In re Webb), 132 B.R. 199, 201 (Bankr. M.D. Fla. 1991)).

There is no statutory definition of "undue hardship." In the case of Pena v. United Student Aid Funds, Inc. (In re Pena), 155 F.3d 1108, 1112 (9th Cir. 1998), the Ninth Circuit Court of Appeals adopted a three-prong test set forth in Brunner v. New York State Higher Educ. Servs. Corp. (In re Brunner), 831 F.2d 395, 396 (2d Cir. 1987). Under this standard, the Debtor must establish

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [the debtor] and [any] dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

Brunner, 831 F.2d at 396.

Under the Brunner test, "the burden of proving undue hardship is on the debtor, and the debtor must prove all three elements before discharge can be granted." Rifino v. United States (In re Rifino), 245 F.3d 1083, 1087-88 (9th Cir. 2001). "If the debtor fails to satisfy any one of these requirements, 'the bankruptcy court's inquiry must end there, with a finding of no dischargeability.'" In re Rifino, 245 F.3d at 1088 (quoting In re Faish, 72 F.3d 298, 306 (3d Cir. 1995)).

The first prong of the Brunner test requires an examination of the Debtor's current income and expenses to ascertain if payment of the loan would cause his standard of living to fall below that minimally necessary if he is required to repay his student loans. DOE does not rely on the first Brunner prong to establish that summary judgment is warranted, conceding that issues of material fact for trial exist under this prong.

The second prong of the Brunner test requires the Debtor establish that additional circumstances exist indicating that his state of affairs is likely to persist for a significant portion of the repayment period. DOE relies on the Court's findings and conclusions in the ECMC Decision, contending that the Debtor's situation has not changed since that time so that the Debtor still cannot establish the second Brunner prong.

The deposition of the Debtor taken May 29, 2007, indicates that the Debtor refuses to take steps to reinstate his podiatrist license as a matter of conscience. Additional statements by the Debtor, however, indicate that he may not be able to have his podiatrist license reinstated because of the required course work and costs incident to reinstating his license. The "additional circumstances" under the second prong need be exceptional only in that they demonstrate insurmountable barriers to the debtor's ability to repay the student loan. Nys v. Educational Credit Mgmt. Corp. (In re Nys), 446 F.3d 938, 941, 946 (9th Cir. 2006). The costs attendant to reinstating the Debtor's podiatrist license may very well be insurmountable given the Debtor's current income and job prospects. Issues of fact exist as to whether the Debtor can establish such factors supporting additional circumstances as set forth in the Nys decision. In re Nys, 446 F.3d at 947. The Court concludes that the Debtor has established that an issue of material fact exists as to the second prong of the Brunner test.

The Debtor has the burden to demonstrate that there is an issue of material fact as to the third Brunner prong to overcome summary judgment. The third prong of the Brunner test requires that the Debtor prove that he has made good faith efforts to repay the loans. The Court adopts its analysis from the ECMC Decision for the third prong. The situation is even more compelling here, as the Debtor has failed to make any voluntary payments on his DOE loans, even during the time he was a podiatrist. As indicated in the ECMC Decision, and not

MEMORANDUM DECISION - 6

rebutted in the instant case, the Debtor also chose for several years to assist his son in paying for his college education, rather than to apply what discretionary income he had to his own student loans. While the Debtor stated at the June 26 hearing that he made some student loan payments during his years as a podiatrist, he could not recall to whom these payments were made. The evidence submitted by DOE establishes that any such payments were <u>not</u> made to DOE. Furthermore, although not conclusive of the issue, there is no evidence that the Debtor has ever attempted to negotiate a repayment plan with DOE, one of the factors a court may consider in reviewing the third <u>Brunner</u> prong. <u>See, e.g.</u>, <u>In re Nys</u>, 446 F.3d at 947; <u>Birrane v. Pennsylvania Higher Educ. Assistance Agency (In re Birrane)</u>, 287 B.R. 490, 500 (9th Cir. BAP 2002) (where the Ninth Circuit Bankruptcy Appellate Panel held that the good faith test is also measured by a debtor's efforts to negotiate a repayment plan).

The Debtor asserted in his response to summary judgment, and argued at the June 26 hearing, that he delivered to the Chapter 7 Trustee (Trustee) $60,000 worth of stock certificates in Valberg Building Materials, Inc. (Stock Certificates), in order to pay down his student loans. The Debtor, however, failed to present any evidence of these Stock Certificates. An examination of the Debtor's bankruptcy case, filed under number 05-51380 on October 12, 2005, shows that the Debtor included on his Schedule B three shares of stock in Valberg Building Materials, Inc. worth $0 - $30,000. There is no evidence in the bankruptcy case, or this adversary proceeding, that these Stock Certificates were delivered to the Trustee. Moreover, on December 22, 2006, the Trustee filed a Report of No Distribution, indicating that there was no property available for distribution from the estate over and above what has been exempted. The Debtor did not claim the Stock Certificates as

MEMORANDUM DECISION - 7

exempt in Schedule C. At the June 26 hearing, the Court gave the Debtor additional time to pursue the matter and file any applicable pleadings and evidence. No new documents were filed after the hearing. Consequently, there is no evidentiary basis for the Court to include the Stock Certificates in its analysis of Debtor's good faith efforts to repay the student loans.

The Debtor has not established an issue of material fact exists as to the good faith prong under Brunner, and DOE is entitled to summary judgment as a matter of law on the Debtor's 11 U.S.C. § 523(a)(8) action. Therefore, the Debtor's student loans are not discharged.

DATED: August 20, 2007

_____
Paul B. Snyder
U.S. Bankruptcy Judge